IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ARTRESI D. COOK, | ) | Case No. 12-04896-TOM-13 |
| | ) | |
| Debtor. | ) | |

**\*NOT INTENDED FOR PUBLICATION\***

<u>MEMORANDUM OPINION AND ORDER</u>

This bankruptcy case came before the Court April 11, 2013 for a hearing on Confirmation of the Debtor's Chapter 13 plan, the Trustee's Objection to Confirmation and Motion to Dismiss Case, the Trustee's Objection to Debtor's Claim of Exemptions, and the Debtor's Response to the Trustee's Objection. Appearing before the Court were Michael J. Antonio, Jr., counsel for the Debtor; D. Sims Crawford, Chapter 13 Trustee; and Artresi Cook, Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(B) and (L).[2] This Court

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §157(b)(2)(B) and (L) provide as follows:

> (b)(2)Core proceedings include, but are not limited to–
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate . . . ;
> . . .
> (L) confirmations of plans[.]

has considered the pleadings, arguments of counsel, the Debtor's testimony and the law, and finds and concludes as follows.[3]

## **FINDINGS OF FACT**[4]

Artresi Cook ("Ms. Cook"), a married woman with an eleven-year-old daughter, filed this Chapter 13 bankruptcy case on October 16, 2012. At the hearing on confirmation she testified that her financial troubles began after her husband sustained an on-the-job injury that eventually prevented him from working. According to Ms. Cook, it is anticipated that her husband will receive a Social Security Disability settlement but until that time Ms. Cook is the household's only source of income. She testified that she has been at the same job for 11 years and makes $10.85 per hour. She further testified that she supplements her income by baking cookies but only makes enough from this side venture to pay for an occasional tank of gas. Ms. Cook stated that when her financial difficulties first started she began obtaining pay advances from her employer and found that she could not keep up with repayment. As of the time of the hearing Ms. Cook owed approximately $1300 to her employer; at least a portion of this had been incurred postpetition.[5]

Ms. Cook filed her bankruptcy petition, schedules and original chapter 13 plan on October 16, 2012. In her plan Ms. Cook proposes to pay secured debts totaling approximately $12,700,

---

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] The debt to Ms. Cook's employer had been omitted from the schedules and Ms. Cook's counsel was unable to explain the omission. At the confirmation hearing this Court granted Ms. Cook's oral motion to retain $1,308.00 of her refund to repay this outstanding loan.

2

owed to two separate creditors; one secured by a 2006 Lexus ES 330 and the other by a 2000 Golf. Unsecured creditors have filed claims in the aggregate of approximately $13,000. Of this unsecured debt, approximately $8,305 is nondischargeable student loan debt. In the original plan filed by Ms. Cook she proposed that holders of unsecured claims would be paid their pro-rata portion of $3,000. Her amended plan filed on October 26, 2012 still proposed that unsecured creditors would receive their pro-rata portion of $3,000, and included a new provision regarding income tax refunds: set forth under "§ IV. Special Provisions" the plan provides that Ms. Cook would "turn over her State and Federal income tax refund to the Trustee in the amount that exceeds her allowed exemptions."[6] On Schedule C, as last amended on November 20, 2012, Ms. Cook claimed three exemptions relating to money she expected to receive by way of income tax refunds. First is a claim of exemption of "2012 Federal and State Income Tax Refund (9.5x60)" in the amount of $570.00 pursuant to Alabama Code section 6-10-6. Second is a claim of exemption of "Other Contingent and Unliquidated Federal and State Income Tax Refunds" in the amount of $880.00, pursuant to Alabama Code section 6-10-6. The third claim of exemption is of "Earned Income Credit and Child Tax Credit" in the amount of $2,720.00, pursuant to Alabama Code sections 38-4-8 and 38-5-5[7]. These three claimed exemptions, and the special provision in the plan regarding turnover of tax refunds in excess of exemptions, are the subject of the Trustee's objections to exemption and to

---

[6] The Debtor again amended her plan on May 20, 2013 to address curing the arrears owed to her landlord Southgroup, LLC. The provisions in the October 26, 2012 plan regarding payment of $3,000 pro-rata to unsecured creditors and turning over tax refunds in excess of exemptions remained unchanged in the May 20, 2013 plan.

[7] As the Trustee notes in his Brief in Support of Trustee's Objection to the Debtor's Amended Claim of Exemptions and in Response to Debtor's Memorandum Brief, Alabama Code section 38-5-5 addresses aid to and medical care of blind persons. The Court presumes that this section was included in error since there has been no representation or other indication that either the Debtor, her spouse, or her dependent child is blind.

3

confirmation.

Ms. Cook had prepared her 2012 federal income tax return by the time of the confirmation hearing and the return was admitted into evidence. According to the return she was due a refund of $4,422, comprised of $253 withheld from her earnings,[8] an Earned Income Credit of $3,169, and a Child Tax Credit of $1,000. According to her testimony she received her refund before the hearing on confirmation, and had already spent a portion of it on furniture from the thrift store, home maintenance, car repairs, and food. Additionally, she testified that she spent some of the money on rent, car tags and insurance so that she could avoid borrowing more money from her employer for these expenses. Ms. Cook testified that she was still holding approximately $2200 of the refund. According to Ms. Cook her 2011 tax refund had also included Earned Income Credit and Child Tax Credit components, and these funds had likely been used to pay rent and utilities. Furthermore, Ms. Cook stated that she would not be eligible for the Child Tax Credit in the future.

## CONCLUSIONS OF LAW

The income tax refunds that Ms. Cook seeks to exempt are comprised of two different sources: withholdings from her pay (the "overpayments") and assistance in the form of Earned Income Credits and/or Child Tax Credits. Each component of the tax refund is claimed as exempt for different reasons. Section 522 of the Bankruptcy Code provides that every debtor is allowed to exempt at least some property from the bankruptcy estate. Precisely what property may be exempted is dependent on where the debtor resides. Section 522 itself contains a list of property that may be exempted; however, these particular exemptions are not available to everyone as Congress has given

---

[8] The return indicates that the Debtor had no tax liability for 2012; $253 was the entire amount of federal income tax withheld from her wages during the year.

4

states the opportunity to "opt out" of the Federal exemption scheme. In other words, states may disallow its citizens from claiming the Federal exemptions found in section 522 and instead allow its citizens to exempt only the property that may be exempted under state law. *See Hamm v. James (In re James)*, 406 F.3d 1340, 1343 (11th Cir. 2005). Because Alabama has opted out of the Federal exemption scheme, a bankruptcy court must look to Alabama law to determine what exemptions a debtor residing in Alabama may claim. *Id*. Two statutes, Alabama Code sections 6-10-6 and 38-4-8, are relevant in the dispute between Ms. Cook and the Trustee. One statute allows exemption of basically any personal property of a debtor's choosing up to a specified dollar limit. The other allows exemption of a narrowly defined category of property, but the exemption is unlimited in amount. The distinction between these two exemptions in relation to Ms. Cook's income tax refund is significant.

OVERPAYMENTS

Alabama Code section 6-10-6 gives a debtor the flexibility to exempt almost any personal property with an aggregate value of up to $3,000:

> § 6-10-6. Personalty.
>
> The personal property of such resident, except for wages, salaries, or other compensation, to the extent of the resident's interest therein, to the amount of $3,000 in value, to be selected by him or her, and, in addition thereto, all necessary and proper wearing apparel for himself or herself and family, all family portraits or pictures and all books used in the family shall also be exempt from levy and sale under execution or other process for the collection of debts. No wages, salaries, or other compensation shall be exempt except as provided in Section 5-19-15 or Section 6-10-7.

Ala. Code § 6-10-6. On Schedule C, as last amended, Ms. Cook claims as exempt under Alabama

5

Case 12-04896-TOM13    Doc 77    Filed 10/10/13    Entered 10/10/13 15:27:13    Desc Main
Document    Page 5 of 17

Code section 6-10-6 personal property including income tax refunds, in an amount less than $3,000.[9] The Trustee's objection to Ms. Cook's exemption of tax refunds under this section is not to the amount, but to the character of the exemptions - the Trustee asserts that Ms. Cook cannot exempt property that does not exist.[10] At the time the Debtor filed this case the 2012 tax year had not been completed, her 2012 return had not been prepared, and she could not be certain how much, if any, overpayment she would receive. Needless to say the amount of overpayment, if any, for future years could not be ascertained.

The Trustee contends that neither section 522(b) nor Alabama Code section 6-10-6 allows a debtor to exempt property that is not yet in existence. The Trustee's position appears to be supported by the well-settled rule that "the claim of exemption is to be determined as of the petition date." *In re Fodor*, 339 B.R. 519, 521 (Bankr. M.D. Fla. 2006). However, the Bankruptcy Rules allow a debtor to amend schedules at any time before the case is closed. Fed. R. Bankr. P. 1009(a); *see also In re Allen*, 454 B.R. 894, 897 (Bankr. S.D. Fla. 2011) ("In this circuit, the bankruptcy court may deny a debtor the right to amend his or her schedules, including the schedule of exempt assets, only 'on a showing of a debtor's bad faith or of prejudice to creditors.'"). Some courts have also allowed a debtor to amend his schedules to exempt property that was acquired postpetition. *See Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir. 1982) (lower court should have allowed debtors to amend their schedules to exempt income tax refund). As a general rule, the Court agrees

---

[9] *See* Debtor's Amended Schedule C, amended November 20, 2012 (Doc. # 26).

[10] Ms. Cook filed this case and last amended Schedule C before the end of the 2012 tax year. By the time of the confirmation hearing she had not only filed her 2012 federal return but had also received her federal tax refund for 2012. Based on past refunds Ms. Cook could have reasonably presumed that she would receive a tax refund for 2012 but nonetheless, at the time she claimed the exemptions, no 2012 refund existed.

that upon filing a case a debtor may only exempt property that actually exists at the time. Whether a debtor may amend his schedules to claim as exempt property that comes into existence postpetition is dependent upon the facts and circumstances in each particular case.

However, a refund attributable to tax overpayments for a future year is unlike most other property that a debtor could potentially acquire postpetition. With a very few exceptions anyone who has income must file a tax return. It is not unreasonable for a taxpayer to anticipate receiving a tax refund, especially if she has received refunds in the past. This Court holds that Ms. Cook may claim as exempt future tax refunds at the time the petition is filed, but only to the extent she has not already used the entire value of the exemption allowed pursuant to Alabama Code section 6-10-6.

A word of caution is in order. It has been this Court's experience that many debtors own personal property valued at or near $3000 at the time their cases are filed.[11] A sudden rash of debtors who own personal property valued at less than $3000 at the beginning of the case will certainly raise suspicion.[12] In other words, this decision is not a license for creative valuation of existing property in order to leave room for exempting future tax refunds.

EARNED INCOME CREDIT

The other component of the Debtor's tax refund at issue in this case is comprised of the Earned Income Credit and Child Tax Credit. Most exemptions available in Alabama, such as the

---

[11] In fact, it has come to the Court's attention that a debtor may claim to possess personal property valued only at $3,000, but upon suffering a loss of some kind (i.e., theft or fire), the value of the same property as reported to the insurance company is much higher. It should be noted that such sudden increases in property value have come to the attention of the U.S. Attorney's Office as well.

[12] There are debtors who legitimately and unquestionably own less than $3000 in property that may be claimed as exempt at the time their bankruptcy cases are filed. The Court's caution should not be taken to mean that a debtor who claims his property is worth less than $3000 will automatically be suspected of filing fraudulent schedules.

personal property exemption, are found in Alabama Code Title 6. However, a few exemptions are scattered throughout the Code, such as section 38-4-8, the section through which Ms. Cook asserts these credits are exempt. Section 38-4-8 provides:

> § 38-4-8. Assistance grants exempt from taxes, levy, garnishment, or other process, and inalienable; bankruptcy.
> All amounts paid or payable as public assistance to needy persons shall be exempt from any tax levied by the state or any subdivision thereof and shall be exempt from levy, garnishment, attachment or any other process whatsoever and shall be inalienable, and in the case of bankruptcy, shall not pass to the trustee or other person acting on behalf of the creditors of the recipient of public assistance.

Ala. Code § 38-4-8.

Unlike the personal property exemption allowed under Alabama Code section 6-10-6, this exemption is unlimited in amount. The Eleventh Circuit Court of Appeals has specifically addressed whether the Alabama Code section 38-4-8 exemption for "public assistance to needy persons" applies to the Earned Income Tax Credit ("EIC") at issue in this case.[13] In *Hamm v. James (In re James)*, the Chapter 7 Trustee argued that section 38-4-8 applied only to state public assistance. *James*, 406 F.3d at 1344. After examining section 38-4-8 and other sections of Alabama Code Title 38, the Court of Appeals noted:

> [T]he exemption set forth in § 38–4–8 explicitly applies to "*[a]ll* amounts paid or payable as public assistance to needy persons," not to public assistance payable *under this chapter*. (Emphasis added.) Had the Alabama legislature intended to restrict the exemption in § 38–4–8 to the particular form of state public assistance payable under Chapter 4 of Title 38, it easily could have so specified. In fact . . . the legislature so specified in § 38–4–1.

*Id*. The court held that the EIC was public assistance falling within the ambit of section 38-4-8 and

---

[13] At the confirmation hearing Ms. Cook informed the Court that she would not be eligible to receive the Child Tax Credit in future years. Therefore, this Court makes no determination as to whether or not Alabama Code section 38-4-8 applies to the Child Tax Credit.

8

thus exempt. *Id*. at 1346. *See also Brasher v. McGregor (In re Brasher)*, 253 B.R. 484 (M.D. Ala. 2000) (same); *In re Coleman*, No. 10-33476, 2011 WL 710456 (Bankr. M.D. Ala. Feb. 22, 2011) (although EIC was exempt under Alabama Code section 38-4-8 it was considered in the totality of the circumstances test to determine whether the chapter 7 filing fee was due to be waived). Considering the directive of the Eleventh Circuit Court of Appeals, this Court holds that the portion of Ms. Cook's tax refund attributable to the EIC is exempt.

Despite the fact that the EIC funds are exempt, they are not immaterial to this bankruptcy case. Section 1325 sets forth the criteria that must be met before a chapter 13 plan may be confirmed; two requirements are of particular interest in this case as they are directly impacted by Ms. Cook's receipt of EIC funds. Section 1325(b)(1) provides in part:

> (a) Except as provided in subsection (b), the court shall confirm a plan if -
> . . .
> (3) the plan has been proposed in good faith and not by any means forbidden by law;
> . . .
> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(a)(3), (b)(1). Each of these requirements will be addressed in turn.

**Disposable Income**

Section 1325(b)(1) instructs that a court may not confirm a plan over the objection of the trustee or an unsecured creditor unless the debtor is either paying unsecured creditors in full or is

9

contributing all of her disposable income to the plan. Multiple courts have held that disposable income includes income tax refunds. *See e.g.*, *In re Murchek*, 479 B.R. 521 (Bankr. N.D. Iowa 2012); *In re Myles*, No. 05-92125-NHM, 2006 WL 6591834 (Bankr. N.D. Ga., Mar. 9, 2006); *In re Abner*, 234 B.R. 825 (Bankr. M.D. Ala. 1999). The determination this Court must make is whether the exempt nature of the EIC portion of a tax refund removes it from consideration as disposable income.

>Section 1325(b)(2) defines disposable income:
>
>(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended [for certain maintenance and support obligations, charitable contributions, and business expenditures].

11 U.S.C. § 1325(b)(2). In turn, current monthly income is defined as:

>(10A) The term "current monthly income"--
>    (A) means the average monthly income from all sources that the debtor receives . . .
>    . . .
>    (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but **excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism**.

11 U.S.C. § 101(10A) (emphasis added).

>Similar to the case before this Court, the debtor in *In re Royal* proposed in her plan to turn

over to the trustee her federal income tax refund, minus the amount attributable to the EIC Credit. *In re Royal*, 397 B.R. 88 (Bankr. N.D. Ill. 2008). The court, noting that section 101(10A) specifically excluded certain payments including Social Security benefits and payments to victims of war crimes, but did not specifically exclude exempt funds, stated that "'[t]he general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded'" and thus held the EIC was included in current monthly income. *Id*. at 93-94. The Court further noted that the EIC statute itself specifically identified instances in which the EIC would not be considered income; thus, because the disposable income calculation was not identified in that list is further evidence that Congress intended the EIC to be included. *Id*. at 94. The court determined that "the earned income tax credit is income under the Bankruptcy Code, and must be included in the calculation of a debtor's [current monthly income]. Since the earned income tax credit is not 'child support payments, foster care payments, or disability payments for a dependent child,' 11 U.S.C. § 1325(b)(2), it is also included in 'disposable income.'" *Id*. *See also In re Forbish*, 414 B.R. 400, 403 (after BAPCPA it is the definitions of current monthly income and disposable income, not exempt status, that determines what is disposable income).

      This Court agrees that any portion of a tax refund attributable to the EIC is to be included in calculating disposable income. Congress could have specifically stated that exempt income was to be excluded from the definitions of disposable income or current monthly income, as it did with other payments that a debtor may receive, but it did not. The EIC is a source of funds available for a debtor's use, and it would be a windfall for a debtor to use these funds as she sees fit while her

11

unsecured creditors receive less than 100% of their claim amounts.[14]

**Good Faith**

Even if it were not proper to include exempt income from the calculation of disposable income there is another reason that an EIC must be turned over to the Trustee, and that is the question of good faith. Section 1325 directs that a court shall confirm a plan if all of the factors in subsection (a) have been satisfied; § 1325(a)(3) requires that a plan must have been proposed in good faith. There is no strict formula for determining whether a plan has been proposed in good faith, but in the Eleventh Circuit good faith has long been assessed using a non-exclusive list of factors known as the "*Kitchens* factors":

> (1) the amount of the debtor's income from all sources;
> (2) the living expenses of the debtor and his dependents;
> (3) the amount of attorney's fees;
> (4) the probable or expected duration of the debtor's Chapter 13 plan;
> (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
> (6) the debtor's degree of effort;
> (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;
> (8) special circumstances such as inordinate medical expenses;
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
> (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
> (11) the burden which the plan's administration would place on the trustee.

*In re Lott*, BK No. 10-06061-TOM-13, 2011 WL 1981740, at *5 (Bankr. N.D. Ala. May 23, 2011)

---

[14] The Court recognizes that the EIC was enacted in part to "'reduce the disincentive to work caused by the imposition of Social Security Taxes on earned income . . . and to provide relief for low-income families . . . .'" *Brasher v. McGregor (In re Brasher)*, 253 B.R. 484, 489 (M.D. Ala. 2000) (*quoting Sorenson v. Secretary of Treasury of United States*, 475 U.S. 851, 854, 106 S. Ct. 1600, 1603-04, 89 L. Ed.2d 855 (1986). The real issue before this Court is whether a debtor facing unforseen circumstances (i.e., a spouse no longer able to work due to injury) is putting forth her best efforts to repay creditors when she keeps EIC funds to use at her discretion instead of repaying her debts.

12

(*quoting In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1983)); *see also Brown v. Gore*, No. 1:12-CV-02202-RDP, 2012 WL 6609005, at *1-*2 (N.D. Ala. Dec. 13, 2012). The *Kitchens* court identified other possible factors to consider such as "'the extent to which claims are modified,' 'the extent of preferential treatment among classes of creditors,' the 'substantiality of repayment to unsecured creditors,' 'whether [a] debt would be nondischargeable under Chapter 7,' and the 'accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court.'" *Lott*, 2012 WL 6609005, at *5 (*quoting Kitchens*, 702 F.2d at 889).

This Court has previously had the opportunity to address the issue of good faith where the debtor had access to, and proposed to keep, funds that were not property of the estate. In *In re Lott* the debtor proposed to pay unsecured creditors 22%[15] while continuing to make contributions of approximately $74 biweekly to her retirement account during the case. *Lott*, 2011 WL 1981740, at *1 n.10, *2. The Chapter 13 Trustee objected to the plan in part on good faith grounds due to the continued retirement contributions. *Id*. at *2. The debtor argued that because 401(k) contributions are excluded from property of the estate under § 541(b)(7) the contributions could not be considered when evaluating good faith. *Id*. at *5-*6. This Court reasoned:

> [E]xemption from inclusion in property of the estate and disposable income does not necessarily mean that Congress intended to exclude . . . retirement account contributions from a Section 1325(a)(3) good faith inquiry. . . . The Court questions whether Debtor's minimal repayment to her unsecured creditors satisfies the "substantiality of repayment to unsecured creditors" and "degree of effort" Kitchens factors. The record clearly reflects that Debtor is in a position to repay her unsecured nonpriority creditors in a much more substantial, meaningful manner if her 401(k) contributions are redirected to her Chapter 13 plan payments. The record also reflects that Debtor has not provided any testimony or evidence of any efforts she has made to cut her expenses or to otherwise change or alter the lifestyle that led to her current financial problems. Furthermore, Debtor has not provided any testimony or evidence

---

[15] The debtor originally proposed to pay 0% to unsecured creditors.

13

>that she is legally compelled to make these contributions, that these contributions are necessary for the preservation of assets of the estate, that she will suffer undue hardship if these contributions are halted, or that the redirecting of these contributions will impair Debtor from obtaining a fresh start.

*Id*. at *6-*7 (footnotes omitted). Consequently, this Court concluded that the plan had not been filed in good faith and denied confirmation. *Id*. at *7-*8.

In *In re Thomas*, a bankruptcy court was confronted with a similar issue, this time with regard to Social Security Income. *In re Thomas*, 443 B.R. 213 (Bankr. N.D. Ga. 2010). The debtor reported on Schedule I a monthly income of $3,876.43. *Thomas*, 443 B.R. at 213. He claimed on Schedule J, however, that his monthly net income was only $1,959.43 after deducting $1,429.70 in Social Security Income as exempt. *Id*. The debtor proposed in his plan to pay nothing to his unsecured creditors; the chapter 13 trustee objected on the grounds that the debtor had not proposed his plan in good faith, since if the debtor's SSI was taken into account he could pay unsecured creditors a 100% dividend over a period of only 21 months. *Id*. at 214-15. The court noted that after BAPCPA, SSI was specifically excluded from the definition of current monthly income in § 1325(b)(2) and therefore is not included in the disposable income calculation. *Id*. at 216-17. However, the court agreed with the trustee that the contribution of disposable income was relevant to determining good faith. *Id*. at 217. Noting that the Eleventh Circuit analyzes good faith by considering the flexible "totality of the circumstances" test, the court identified factors to be considered, including whether the debtor has exempt assets "that could create a surplus for a debtor," whether the plan is consistent with the debtor's available resources, the debtor's choices regarding treatment of creditors, whether the debtor filed his case to avoid obligations to creditors despite his ability to pay, and the effort needed to complete the plan. *Id*. at 217-18. Noting that under the

14

Case 12-04896-TOM13   Doc 77   Filed 10/10/13   Entered 10/10/13 15:27:13   Desc Main
Document      Page 14 of 17

debtor's proposal he would be paying unsecured creditors nothing while retaining more than two times his monthly plan payments, the court concluded that the plan was not proposed in good faith. *Id*. at 219.

A review of the *Kitchens* and other relevant factors suggests that Ms. Cook's plan has not been proposed in good faith. There is no evidence that Ms. Cook has an unusually high amount of living expenses or medical expenses. She is proposing to pay only $3,000 to her unsecured creditors, and this amount could significantly increase if her access to the EIC funds was taken into account. In fact, approximately $8,300 of the unsecured debt owed by Ms. Cook is nondischargeable student loan debt that continues to incur interest whether or not she is in bankruptcy. In other words, Ms. Cook will still owe the student loan debt, plus accruing interest, even if she receives a discharge in this case. Thus the plan as proposed does not appear to be in Ms. Cook's best interests either. It would be better to reduce as much of the student loan debt as possible so that her fresh start is meaningful, as opposed to Ms. Cook exiting bankruptcy with most of her unsecured debt, plus interest, still intact.

Allowing Ms. Cook to retain the exempt EIC to use as she sees fit would create a surplus of income over that which is reasonably necessary for the support of Ms. Cook and her dependents. She owes valid debts to creditors who have provided money, goods, or services to her. She has access to a not-insignificant amount of income from the refund of her income tax repayment and the EIC Credit. Ms. Cook has an obligation to repay her debts and should use this additional income for the benefit of creditors that she owes rather than to acquire new possessions or improve her life style. For her to propose a plan in good faith she must disclose how she will use all income from

15

whatever source;[16] whatever portion of the income that is not necessary for the basic necessities, i.e., food, utilities, and a roof over her head, should be dedicated to paying those creditors that extended credit to her in good faith and have a right to expect to be paid if funds are available.

## CONCLUSION

It was obvious from Ms. Cook's testimony at her confirmation hearing that she has experienced hardship as a result of her husband's injury and subsequent inability to work. She owns no real property, does not drive an expensive new car, owes no unsecured priority debts such as back child support or taxes, and does not owe an exorbitant amount of unsecured, dischargeable debt. Ms. Cook does not appear to have an extravagant lifestyle, and presumably she would use the EIC refund to help make ends meet. Nonetheless, Congress has mandated that a debtor devote all disposable income to repay unsecured creditors, and that a debtor must propose a plan in good faith. In a case where unsecured creditors are to be repaid less than 100% of their claims, these criteria will be met if income tax refunds, including the EIC, are to be turned over to the Chapter 13 Trustee.[17] Therefore, the Trustee's Objection to Confirmation is due to be sustained and confirmation of Ms. Cook's plan is due to be denied. The Trustee's Objection to the Debtor's Claim of Exemption is due to be overruled to the extent that (1) Ms. Cook may claim the portion of her future income tax refunds attributable to overpayments as exempt under, and subject to the limitations of, Alabama

---

[16] It should be remembered that Ms. Cook anticipates her husband will receive (if he has not started receiving already) Social Security Disability income.

[17] This Court always has been and continues to be willing to entertain motions for debtors to keep the refund provided they have a legitimate reason for it. Furthermore, this Court has also been willing to allow the "fiction" of spreading the refund out over the course of the year instead of turning over refunds upon a showing, i.e., by providing bank statements, that it had been the debtor's practice before bankruptcy to put the money in the bank and draw it out throughout the year for ordinary living expenses.

16

Code section 6-10-6, and (2) Ms. Cook may claim the portion of her income tax refunds attributable to the Earned Income Credit as exempt under Alabama Code section 38-4-8. The Objection is due to be sustained to the extent that Ms. Cook's total claim of exemption under Alabama Code section 6-10-6 exceeds $3,000. Ms. Cook shall have 14 days to file a new plan. If Ms. Cook timely files a new plan, a new hearing on confirmation shall be set. If Ms. Cook fails to file a new plan within 14 days, the Trustee's Motion to Dismiss will be granted. Pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, a separate Order consistent with this Memorandum Opinion shall be entered.

Dated: October 10, 2013

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

xc: D. Sims Crawford, Chapter 13 Trustee
    Michael J. Antonio, Jr., attorney for Debtor
    Artresi Cook, Debtor